Jose MARIN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 3–88–179–CR.

Court of Appeals of Texas, Austin.

Dec. 19, 1990.

Troy Hurley, Odom & Hurley, Temple, for appellant.

Arthur C. Eads, Dist. Atty., Honorable James T. Russell, Administrative Asst., Belton, for appellee.

Before POWERS, JONES and ONION,* JJ.

JONES, Justice.

Appellant was convicted of conspiracy with the intent to commit the offense of aggravated delivery of cocaine over 400 grams. *See* Tex.Pen.Code Ann. § 15.02 (1974) and 1983 Tex.Gen.Laws, ch. 425, § 6, at 2374 [Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.03(c) (Texas Controlled Substances Act) since repealed].[1] Following the jury's verdict, the trial court assessed appellant's punishment at twenty-five (25) years' imprisonment.

In point of error one, appellant advances the contention that the trial court "erred in not allowing court-appointed attorney ten days to prepare for trial, there being no written or oral waiver of the right accorded by the statute." *See* Tex.Code Cr.P.Ann. art. 1.051(e) (Supp.1991).

The indictment was returned on January 27, 1988. Retained counsel Potter and Thompson were permitted to withdraw on February 16, 1988. On the same date the trial court appointed John Gauntt to represent the appellant, upon the filing of a pauper's oath. On February 26, 1988, a trial date of May 16, 1988, was set. On May 10, 1988, attorney Gauntt filed a "Motion to Substitute Attorney For Defendant" requesting that Fancy Jezek, who also signed the motion, be substituted as attorney for appellant. The court granted the motion on the same date. The trial commenced on May 16, 1988. Jezek did not request a continuance or object in any way to being substituted as appointed counsel less than ten days before trial. She announced "ready" when the case was called and proceeded to represent appellant throughout the trial. Following the conviction, appellant did not file a motion for new trial. Yet another court-appointed counsel on appeal now urges that the trial court violated article 1.051(e) because there was no waiver, written or oral, of the ten-day preparation period.

In 1987, article 1.051 was added to the Code of Criminal Procedure. 1987 Tex. Gen.Laws, ch. 979, § 1, at 3321, effective September 1, 1987. Section (e) thereof provides in part:

> An appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in writing or on the record in open court....

Tex.Code Cr.P.Ann. art. 1.051(e) (Supp. 1991). This provision replaced former subsection (b) of article 26.04 of the 1965 Code of Criminal Procedure, which contained

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (1988).

1. *See now* Tex.Health & Safety Code Ann. § 481.112(c) (Pamph.1991).

similar language.[2]

The purpose of the statute was to guarantee an indigent defendant that he and his appointed counsel would have a reasonable time to prepare a defense. *Hamel v. State*, 582 S.W.2d 424, 428 (Tex.Cr.App. 1979). The former statute was held to be mandatory, and failure to comply therewith was held to constitute reversible error without the necessity of showing harm or prejudice. *See Peters v. State*, 575 S.W.2d 560, 561 (Tex.Cr.App.1979). It was also held that a violation of the statute could be raised for the first time on direct appeal. *Henson v. State*, 530 S.W.2d 584, 585 (Tex. Cr.App.1975); *Houston v. State*, 490 S.W.2d 851, 852 (Tex.Cr.App.1973).

We recognize that former article 26.04(b) was mandatory and that a violation thereof probably would have called for reversal without any inquiry as to harm and without having been objected to or otherwise brought to the attention of the trial court. We also recognize that the relevant provisions of former article 26.04(b) have been brought forward in article 1.051(e). However, we conclude that the adoption of the Texas Rules of Appellate Procedure in 1986 changed prior law.

We hold that, under the circumstances described above, appellant waived any error regarding article 1.051(e). *See* Tex. Code Cr.P.Ann. art. 1.14(a) (Supp.1991). We do not suggest that appellant waived his right for his appointed attorney to have ten days preparation time before trial. The only way *that* right could have been waived was to have the consent of the defendant in writing or on the record in open court, as set forth in article 1.051(e). The right that appellant did waive, however, was his right to *complain on appeal* of the trial court's failure to allow appointed counsel the full ten days. The waiver of that right is not governed by article 1.051(e), but by Rule 52(a) of the Texas Rules of Appellate Procedure.

Rule 52(a) provides:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

Tex.R.App.P.Ann. 52(a) (Pamph. 1990). The only relevant limitations on the rule-making power of the Court of Criminal Appeals are that rules "may not abridge, enlarge, or modify the substantive rights of a litigant." Tex. Gov't Code Ann. § 22.108(a) (1988).

Rule 52(a) is plainly a rule of procedure and does not affect the substantive rights of a criminal defendant. A defendant still has the right, pursuant to article 1.051(e), to ten days between appointment of counsel and trial. The only impact of Rule 52(a) is that if the defendant wishes to complain on appeal about an abridgement of that right by the trial court, he must have "presented to the trial court a timely request, objection or motion" and obtained a ruling thereon. Because it relates to procedure only, Rule 52(a) does not violate section 22.108 of the Government Code. Clearly, such a rule is within the power of the Court of Criminal Appeals to promulgate. The only remaining question is simply whether Rule 52(a) means what it says. We hold that it does.

In both *Sodipo v. State*, No. 1390–88 (Tex.Cr.App., September 12, 1990) (not yet reported) (State's motion for rehearing granted November 28, 1990), and *Young v. State*, 796 S.W.2d 195 (Tex.Cr.App.1990), the alleged error was very clearly preserved by motion or objection. The older cases cited by the dissent, holding that such a complaint could be raised for the first time on appeal, were all decided before adoption of the Rules of Appellate Procedure in 1986.

**2.** Article 26.04(b) provided:
The appointed counsel is entitled to ten days to prepare for trial, but may waive the time

by written notice, signed by the counsel and the accused.
1965 Tex.Gen.Laws, ch. 722, § 1, at 425.

Such a complete failure to present the issue to the trial court might be said to put this case in the posture of a collateral attack as to that issue. Even if this were so, the Court of Criminal Appeals has long held that in a collateral attack based on violation of the ten-day requirement, the party attacking the conviction must show harm. *See Ex Parte Reed,* 610 S.W.2d 495, 499 (Tex.Cr.App.1981); *Sutton v. State,* 519 S.W.2d 422, 425–26 (Tex.Cr.App.1975); *Ex Parte Meadows,* 418 S.W.2d 666, 668 (Tex.Cr.App.1967). In the present case, there has not been even an allegation of harm, much less a showing of harm. While we do not hold that such a "collateral attack" analysis must be applied where error is not preserved for appellate review, the plain language of Rule 52(a) would demand that it be given *at least* that much effect, in which event the result of the present appeal would be the same.

Moreover, even if a violation of article 1.051(e) could be raised for the first time on appeal, another Rule of Appellate Procedure may affect this case. Rule 81(b)(2) provides as follows:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, *unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.*

Tex.R.App.P.Ann. 81(b)(2) (Pamph.1990) (emphasis added). Since the adoption of Rule 81(b)(2) in 1986, there appears to have been a shift away from the concept of granting reversals where no harm is shown, even if the statute involved is mandatory. *Cf. Herring v. State,* 752 S.W.2d 169, 172–74 (Tex.App.1988), *remanded on other grounds,* 758 S.W.2d 283 (Tex.Cr.App.1988); *Moncivaiz v. State,* 752 S.W.2d 722, 725 (Tex.App.1988) (Nye, C.J., dissenting), *rev'd,* 778 S.W.2d 866 (Tex.Cr.App. 1989); *Mason v. State,* 740 S.W.2d 517, 519–20 (Tex.App.1987, pet. ref'd). While it has not been held that all "mandatory" statutes are now subject to a harmless error analysis, at least some are. *See Roberts v. State,* 784 S.W.2d 430, 435–36 (Tex. Cr.App.1990).

We recognize that the Court of Criminal Appeals recently held that a harm analysis should not be applied to the violation of a mandatory statute where the appellate record does not "reveal any concrete data from which an appellate court can meaningfully gauge or quantify the effect of the error." *Sodipo,* at ——; *see also Beebe v. State,* 756 S.W.2d 759 (Tex.App.1988, pet. granted). In the present case, however, we conclude that the record contains sufficient data for us to gauge the effect of the error, if any.[3]

First, this was not the classic case in which the appellant did not receive *any* appointed counsel until minutes before trial. On the contrary, counsel was initially appointed to represent appellant some three months before trial. The trial date had been scheduled by the trial court more than two-and-one-half months before the trial began. Next, the motion by which Jezek was substituted for Gauntt was signed by both attorneys, indicating at least some level of cooperation between the two. The motion was also signed personally by appellant, indicating that the substitution was made with his approval and possibly at his request. Perhaps most significant, Jezek made no request for continuance or other objection to having less than ten days between the date of her substitu-

---

**3.** It seems to us that the "harm analysis" mandated by Rule 81(b)(2) can be applied to *any* error without fear of diminishing an appellant's rights. If the appellate record in a particular case does not contain enough data from which to gauge or quantify the effect of an error, then the reviewing court obviously could not determine beyond a reasonable doubt that the error made no contribution to the conviction or punishment. Accordingly, Rule 81(b)(2) would require that the conviction in such a case be reversed. This approach strikes us as far simpler to administer and apply than one in which reviewing courts are left to divine which types of error are subject to a harm analysis and which are not.

tion and the date of trial. The suffering of harm or injury generally results in an outcry; from the absence of any outcry we may reasonably infer the absence of any injury. Finally, appellant makes no claim of harm or prejudice to this Court.

Under these circumstances, we have no difficulty concluding beyond a reasonable doubt that the error, if error it was, made no contribution to the conviction or to the punishment. In *Sodipo*, the Court of Criminal Appeals spoke approvingly of the federal courts' reasoning in applying the federal "automatic reversal rule" only to those rights that are "so basic or fundamental that in their absence 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence ... and no criminal punishment may be regarded as fundamentally fair.' " *Sodipo*, at —— (quoting *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). In the present case, we have no doubt as to the reliability of the outcome of the trial. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the trial court erred in overruling the motion to quash the indictment because it did not charge an offense against the laws of the State of Texas. Appellant was jointly charged and tried with Donald Ray Woods, Luis Carrion, and three others. In *Woods v. State*, 801 S.W.2d 932 (Tex.App.1990) decided this date, the defendant raised the same contention as the appellant does here. For the reasons stated in disposing of the fourth point of error in *Woods*, we overrule appellant's second point of error.

In his third point of error, appellant asserts that the trial court erred in failing to dismiss the array when appellant made a prima facie case that the state had used peremptory challenges to strike jurors on the basis of race. In his fourth point of error, appellant contends that the trial court erred in instructing the jury "that they could consider the overt acts committed by Edward Bing Miller, after he became an agent of the police, in support of the alleged agreement to commit the object offenses of the conspiracy." In point of error five, appellant complains that the trial court's charge allowed the jury to convict on a theory not alleged in the indictment. In his sixth point of error, appellant asserts that the trial court erred in instructing the jury that the membership in a criminal conspiracy may change from time to time. In *Carrion v. State*, 802 S.W.2d 83 (Tex.App.1990) decided this date, the defendant raised these same contentions. For the reasons stated in disposing of the second, third, fourth, and fifth points of error, respectively, in *Carrion*, we overrule appellant's points of error three, four, five, and six.

In his seventh point of error, appellant challenges the sufficiency of the evidence to sustain the conviction. Appellant urges that the evidence was insufficient to prove that he entered into an agreement with any other co-conspirator, whether indicted or not, which would constitute the offense charged.

Appellant was jointly tried with five co-defendants. The indictment charged a number of named defendants and unindicted co-conspirators with conspiring to commit the offense of aggravated delivery of cocaine over 400 grams. The indictment also alleged twenty-two overt acts in connection with the conspiracy. The voluminous record consists of almost 1,300 pages.

The appellant in his brief generally cites authorities concerning the state's burden of proof, the elements of the offense, and the standard of review for sufficiency questions. As for the facts, appellant simply states that the

> evidence against Appellant consisted of testimony of accomplice witnesses, hearsay testimony, and the fact he was present when some search warrants were served. He was never arrested for delivery of a controlled substance or even found in possession of any. The State has failed to exclude every other reasonable hypothesis for appellant's being in the company of other co-conspirators at certain times.

The appellant does not designate which witnesses he has in mind, or the place in the record where the hearsay evidence was admitted, nor does he furnish a discussion of the facts and authorities to maintain his claim of insufficiency.

Rule 74(f) of the Rules of Appellate Procedure, relating to appellate briefs, provides in part:

> The argument shall include: (1) a fair, condensed statement of the facts pertinent to such points, with reference to the pages in the record where the same may be found; and (2) such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue....

Tex.R.App.P.Ann. 74(f) (Pamph.1990).

Points of error which are not properly briefed do not present anything for review. *Hefner v. State*, 735 S.W.2d 608, 626–27 (Tex.App.1987, pet. ref'd). The seventh point of error is waived.

The judgment of conviction is affirmed.

POWERS, Justice, concurring.

I concur in Justice Jones's view that we may not reverse the judgment below based upon the requirement, in Tex.Code Cr.P. Ann. art. 1.051(e) (Supp.1991), that "appointed counsel" must have 10 days preparation time before a proceeding begins. My reasons are two: (1) the appellate record does not show that Jezek, Marin's attorney, was an "appointed counsel" within the meaning of the statute; and (2) even if she was, the record is undisputed that she replaced a previous "appointed counsel" who was given more than 10 days preparation time. Nothing in art. 1.051 or the cases construing it implies that in a case like the present we must reverse the judgment because harm is presumed and the defendant need not complain in the trial court regarding a want of 10 days preparation time.

THE STATUTE

The provisions of art. 1.051 are obviously designed to effectuate a criminal defendant's constitutional right to counsel, with particular reference to and arrangements for an "appointed counsel" in the case of "indigent" defendants. Whether indigent or not, all criminal defendants are given, in paragraph (a), the statutory "right to consult in private with counsel sufficiently in advance of a proceeding to allow adequate preparation for the proceeding." The remaining paragraphs deal with the matter of "appointed counsel" for indigent defendants. Paragraph (b) defines "indigent" as meaning "a person who is not financially able to employ counsel."

Paragraph (c) declares that "[a]n indigent defendant is entitled to have an attorney appointed to represent him in" cases like the present case; and "[i]f an indigent defendant is entitled to and requests appointed counsel, the court shall appoint counsel to represent the defendant as soon as possible."

Paragraph (e) states that "[a]n appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in writing or on the record in open court." A similar provision in former art. 26.04 was construed to mean that unless "appointed counsel" received the required 10 days preparation time (irrespective of the date of formal appointment) or a waiver was shown, the appellate court must sustain on appeal a defendant's point of error complaining in that regard. *Henson v. State*, 530 S.W.2d 584, 585 (Tex.Cr.App.1975); *Crothers v. State*, 480 S.W.2d 642, 643 (Tex.Cr.App.1972).

The text of art. 1.051 is quite clear that the 10 days preparation time applies only to "appointed counsel." Former art. 26.04 was not less clear in this regard. *Schafer v. State*, 436 S.W.2d 352, 354 (Tex.Cr.App. 1969). Moreover, a complaint regarding the 10 days preparation time could be entertained only if the appellate record showed affirmatively that "counsel was in fact appointed." *Harville v. State*, 591 S.W.2d 864, 869 (Tex.Cr.App.1980); *see also Bowers v. State*, 570 S.W.2d 929, 931

(Tex.Cr.App.1978) ("This provision of the Code only applies to appointed counsel. There is no showing in this record that appellant's trial counsel was appointed for this trial.").

## WHETHER THE RECORD SHOWS AFFIRMATIVELY THAT JEZEK WAS MARIN'S "APPOINTED COUNSEL"

The record shows that on February 16, 1988, Marin applied to the district court requesting an appointment of counsel to represent him because he was without means to employ counsel; and on the same day the court appointed John Gauntt in an order signed by the judge, based expressly upon Marin's affidavit that he was without counsel and too poor to employ counsel. Later in February and in March 1988, Gauntt filed various motions in Marin's behalf and obtained relief thereon. Trial was set for May 16, 1988. Until this point, art. 1.051 had the precise effect it was intended to have in the ordinary case in which an indigent defendant has "appointed counsel."

On May 10, 1988, however, Gauntt filed the following motion:

\* \* \* \* \* \*

Now comes John Gauntt ... and moves the Court to substitute in his place and stead as the Attorney for Defendant:

Fancy H. Jezek

P.O. Box 10,310

Killeen, TX 76547–0310

\* \* \* \* \* \*

On the same day, the court signed and the clerk filed the following order on Gauntt's motion:

\* \* \* \* \* \*

On this the 10th day of May, 1988, it is ordered that the name of Fancy H. Jezek, be substituted as Attorney for Defendant in the place and stead of John Gauntt.

\* \* \* \* \* \*

After May 10, 1988, Jezek represented Marin under the order of that date. She filed on the day of trial several motions, announced ready for trial on May 16, 1988, and conducted the trial thereafter. She did not move for continuance on any ground, and did not complain in the trial court that she was not given adequate time to prepare for any aspect of the case. *If* Jezek was an "appointed counsel" within the meaning of art. 1.051, she was arguably entitled to 10 days preparation time under paragraph (e) of that statute, and arguably entitled to reversal on appeal based upon the construction given by the Court of Criminal Appeals to the antecedent art. 26.04.

The dissenting opinion infers, from circumstantial evidence gleaned from the appellate record, that Jezek was an "appointed counsel": (1) Jezek's predecessor Gauntt was "appointed" as shown in the record, based upon Marin's application and indigency; (2) the docket sheet bears the notation "Jezek apt."; and (3) Marin is represented on appeal by "appointed counsel." Even if our appellate authority included a power to make original fact determinations of this character, I believe it is not what the Court of Criminal Appeals had in mind when it held in *Bowers* "that there must be a showing that counsel was in fact appointed in order to find a violation of Art. 26.04(b) ..." *Harville*, 591 S.W.2d at 869. *Bowers* implies that an explicit showing of an appointment of counsel is required; there the appearance of a pauper's oath in the appellate record was deemed insufficient to support an inference that counsel was appointed under art. 26.04. *Bowers*, 570 S.W.2d at 931. Curiously, the *Bowers* court was not content to rest its holding on that basis alone, for the court also pointed out that Bowers's counsel had "filed no motions for continuance" and had represented at "the pre-trial hearing that he had prior familiarity with this cause and nowhere does there appear to be an allegation of surprise or harm." There are, however, more important reasons that preclude Jezek's status as "appointed counsel" within the meaning of art. 1.051.

It is only a gratuitous assumption that Jezek was appointed by the trial court pursuant to art. 1.051. It is, moreover, an assumption contrary to the sense of that statute and the record in this case. The statute contemplates counsel *chosen by the trial court* and ordered to represent a defendant *who has no counsel at all.* In contrast, Jezek was chosen by Marin's attorney Gauntt and Marin had counsel (Gauntt) at the time in question. If the present case is to fall within the scope of art. 1.051 it can only be by an expansion of that statute through interpretation; it cannot possibly be because the case fits literally within the circumstances in which appointments are made under art. 1.051.

I would hold Jezek was not an "appointed counsel" within the meaning of art. 1.051. The record does not show affirmatively that she was appointed to represent Marin under the provisions of that statute; instead, the record shows affirmatively that Gauntt was so appointed and that Jezek was substituted for Gauntt on a motion filed in Marin's behalf at a time and for reasons that we must presume were judged by Gauntt and Marin to be in the latter's best interest. The record shows affirmatively that Jezek was *selected by Gauntt and Marin,* and not by the court as under art. 1.051; and it shows affirmatively that Marin *had counsel* when Jezek became his lawyer, as opposed to the situation in which a defendant has no counsel at all—the only circumstance in which art. 1.051 authorizes the trial court to choose and appoint counsel for him under that statute.

## ASSUMING JEZEK WAS AN "APPOINTED COUNSEL" UNDER ART. 1.051, MUST WE REVERSE THE JUDGMENT BELOW ON A THEORY OF PRESUMED HARM AND ABSENT A COMPLAINT IN THE TRIAL COURT RELATIVE TO PREPARATION TIME?

The circumstances of the present case do not, for the reasons given previously, fit into the literal scope of and circumstances contemplated in art. 1.051. That statute contemplates the ordinary case in which a single lawyer is appointed "as soon as possible" to represent a criminal defendant, at his request and on his showing of indigency, and that lawyer then represents the defendant throughout the course of the proceeding. The statute does not provide expressly for a case in which one "appointed counsel" succeeds another within 10 days of a "proceeding," the first having had ample preparation time by reason of his appointment several months in advance of the proceeding. Nor does the statute provide expressly for a criminal defendant to designate his own "appointed counsel" in a motion requesting the trial court to substitute *that particular* lawyer for the "appointed counsel" chosen previously by the trial court and ordered to represent the defendant. Shall we then construe art. 1.051(e) as applying in full rigor in such circumstances, so that we must reverse the judgment below when the defendant claims on appeal that his lawyer did not have the 10 days preparation time guaranteed by that statute, without a showing of harm and without any necessity for the defendant to raise the matter first in the trial court?

I would hold that we may not construe art. 1.051(e) in the manner suggested. Nothing in the text or the statutory purpose gives rise to an implication that the statute should apply in that manner in the present case. Neither the appellant nor the dissenting opinion suggests a reason for so extending the scope of the statute by implication; they are content to rest opaquely on the literal terms of the statute when the circumstances of this case obviously do not come within those terms. Conversely, however, there are rather obvious reasons *against* extending the statute by implication so that it applies in the manner suggested:

1. When a criminal defendants moves, as in the present case, to substitute a lawyer of his own choosing for the "appointed counsel" designated previously by the trial

court under art. 1.051, the defendant thereby invokes his constitutional right to counsel of his own choosing; and the trial court might infringe that right by overruling the motion.

2. Not only is the defendant's right to choose his own counsel invoked by such a motion; his right to control his defense is also involved in the matter. When the defendant files his motion within the 10 days before the proceeding begins, he presumably has determined in consultation with his initial "appointed counsel" that a substitution of counsel and the timing of the motion were in his best interest. This is especially implied when no request is made for a continuance and the 10–day statutory period for preparation is not invoked in the trial court. Moreover, the defendant may rely upon the ethical considerations that prohibit the new counsel from accepting representation unless he is sufficiently prepared to render competent service, and prevent the previous counsel from withdrawing if doing so would prejudice the defendant's representation.

It seems to me the better view, in such a case, simply to "tack" the times for preparation insofar as applying art. 1.051(e) is concerned, absent some complaint in the trial court that the second "appointed" attorney did indeed lack sufficient time to prepare for the proceeding. In other words, I would take the view that the trial court's regular appointment of the first counsel satisfied the statute; any complaint by the second appointed counsel that he lacked adequate preparation time would have to be made in the trial court and come within the ordinary appellate rules about harm and preservation of error as these are outlined in the opinion of Justice Jones.

ONION, Justice (retired), dissenting.

I respectfully dissent to the disposition of appellant's first point of error, and the interpretation given to the statutes involved by the majority.

In his first point of error appellant advances the contention that the trial court "erred in not allowing court-appointed attorney ten days to prepare for trial, there being no written or oral waiver of the right accorded by the statute." *See* Tex.Code Cr.P.Ann. art. 1.051(e) (Supp.1990).

The indictment, returned January 27, 1988, charged the appellant and twenty-one other named defendants and four named but unindicted co-conspirators with conspiracy with the intent to commit the offense of aggravated delivery of cocaine over 400 grams. Twenty-two (22) overt acts were alleged, ranging in time from October 6, 1986 until January 17, 1988. Appellant's retained counsel were permitted to withdraw on February 16, 1988. Upon the filing of an affidavit of indigency, attorney John Gauntt was appointed to represent the appellant on the date retained counsel withdrew. On May 10, 1988, attorney Gauntt filed a "Motion to Substitute Attorney For Defendant" requesting that Fancy Jezek, an attorney, be substituted "in his place and stead to serve as the attorney for Defendant." The motion was signed by Gauntt and Jezek. The court granted the motion on the same date. The docket sheet reflects Jezek was "apt.," and there was no showing of any change at the time in appellant's status as an indigent.[1] There appears to be no question but that Jezek was appointed counsel for the trial on the merits.[2] Gauntt withdrew and did not participate in the trial where appellant was tried jointly with five co-defendants. Excluding May 10, 1988, Jezek had five days to prepare for trial. Attorney Jezek did not request a continuance or object in any way to being substituted as appointed counsel less than ten days before trial. She announced "ready" and proceeded to represent appellant throughout the trial. Following the conviction, appellant did not file a motion for new trial. The record is devoid of any waiver of the ten-day preparation period as required by statute.

1. Appellant is represented by court appointed counsel on appeal.

2. The State does not contend that the contrary is true.

In 1987, article 1.051 was added to the Code of Criminal Procedure. 1987 Tex. Gen.Laws, ch. 979, § 1, at 3321, effective September 1, 1987. Section (e) thereof provides in part:

> An appointed counsel is entitled to 10 days to prepare for a proceeding but may waive the preparation time with the consent of the defendant in writing or on the record in open court....

Tex.Code Cr.P.Ann. § 1.051(e) (Supp.1990).

This provision replaced former subsection (b) of article 26.04 of the 1965 Code of Criminal Procedure which contained similar language.[3] The purpose of that statute was to guarantee an indigent defendant that he and his appointed counsel would have a reasonable time to prepare a defense. *Hamel v. State,* 582 S.W.2d 424, 428 (Tex.Cr.App.1979); *Moore v. State,* 493 S.W.2d 844, 845 (Tex.Cr.App.1973). It was designed to prevent infringement of the indigent accused's right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 10 of the Texas Constitution.

As the majority has noted, article 26.-04(b) was held to be mandatory, and failure to comply therewith constituted reversible error without the necessity of showing harm or prejudice. *See Pollinzi v. State,* 541 S.W.2d 445, 446 (Tex.Cr.App.1976); *Hayles v. State,* 507 S.W.2d 213, 214 (Tex. Cr.App.1974); *Crothers v. State,* 480 S.W.2d 642, 643 (Tex.Cr.App.1972); *Steward v. State,* 422 S.W.2d 733, 737 (Tex.Cr. App.1968) *See also Young v. State,* 752 S.W.2d 235 (Tex.App.1988), *aff'd* 796 S.W.2d 195 (Tex.Cr.App.1990); *Claybon v. State,* 672 S.W.2d 881 (Tex.App.1984, pet. ref'd). A violation of the statute could be raised for the first time on direct appeal.

*Houston v. State,* 490 S.W.2d 851, 852 (Tex.Cr.App.1973). A defendant was not required to file a motion for continuance, to request the ten-day period, or file a motion for new trial in order to be considered on appeal. *Id.* It was wholly immaterial whether any complaint regarding the sufficiency of the preparation was raised at trial. *Henson v. State,* 530 S.W.2d 584, 585 (Tex.Cr.App.1975). The issue of a violation of the statute could even be considered on appeal as unassigned error in the interest of justice. *Id.*

67 Tex.Jur.3d., *Statutes,* § 143 at 766–67 (1989) provides:

> When a statute is reenacted without material change, it is generally presumed that the legislature knew and adopted or approved the interpretation placed on the original act, and intended that the new enactment should receive the same construction as the old one. Accordingly, the construction of the old act is regarded as a part of the new, and a different interpretation will be given only for impelling and cogent reasons.

This is a well-recognized rule of statutory construction.

Article 1.051(e) should thus be given the same interpretation as previously given to art. 26.04(b) which it replaced. This was obviously the legislative intent. If it had been the legislative intent that the ten-day preparation period was to be accorded only upon request, the Legislature could have so worded the statute as it did in Tex.Code Cr.P.Ann. 28.10(a) (1989). Of course, a defendant may generally waive any right secured him by law except the right of trial by jury in a capital felony case. *See* Tex. Code Cr.P.Ann. art. 1.14(a) (Supp.1991). However, the Legislature provided the form the waiver must take in article

---

**3.** Article 26.04(b) provided:
> The appointed counsel is entitled to ten days to prepare for trial, but may waive the time by written notice, signed by the counsel and the accused.

Tex.Code Cr.P. art. 26.04(b) (1965).

The current statute relates to "a proceeding" rather than "trial" and thus is somewhat broad-

er than the former statute. The principal difference between the two statutes is the provision that the waiver of the ten-day preparation period may now be oral if "on the record in open court." *Cf. Ex parte Cooper,* 388 S.W.2d 939 (Tex.Cr.App.1965) (holding oral waiver insufficient).

**954**

1.051(e). *See also* waiver forms required by Tex.Code Cr.P.Ann. arts. 1.051(g) (Supp. 1991) and 1.13 (1977).

The majority concludes that the adoption of the Texas Rules of Appellate Procedure by the Court of Criminal Appeals in 1986 changed "prior law," so that the fact that the relevant provisions of former article 26.04(b) were brought forward in article 1.051(e) is not significant. The majority does not suggest that the indigent appellant waived his right for his appointed counsel to have the ten-day preparation period or that there was no violation of the statute, but holds that in order to *complain on appeal* appellant must have presented a timely and specific objection or request to the trial court. This is so, the majority reasons, because the waiver of the right is governed by Rule 52(a) of the Texas Rules of Appellate Procedure and not by article 1.051(a).

In 1985, the Legislature authorized the repeal of certain designated statutes and granted the Court of Criminal Appeals power to promulgate rules of posttrial, appellate and review procedure in criminal cases. 1985 Tex.Gen.Laws, ch. 685, §§ 1–4 at 2472–73. The first Texas Rules of Appellate Procedure adopted under this authority became effective September 1, 1986. *See* 701–702 S.W.2d (Texas cases) at XXIX. In 1987, the statutory authority for such rulemaking power was amended without substantial change. 1987 Tex.Gen. Laws, ch. 148, § 2.04(a) at 542, *see* now Tex.Gov't Code Ann. § 22.108 (1988). While all the rules authorized to be promulgated were procedural in nature, the legislature in its wisdom provided a limitation upon the rulemaking power of the Court of Criminal Appeals. It provided that in adopting appellate rules the court "may not abridge, enlarge or modify the substantive rights of a litigant." *See* Tex.Gov't Code Ann. § 22.108(a). It is also provided that "[T]he rules and amendments to rules remain in effect unless and until disapproved, modified or changed by the legislature." *See* Tex.Gov't Code Ann. § 22.108(b) (1988).

Though the rules have been amended several times Rule 52(a) has remained unchanged. This rule, labeled a "General Rule," codified some of the prior caselaw. *See* e.g. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Cr.App.1977). I have been unable to find where the Court of Criminal Appeals or any other court has given Rule 52(a) the board sweeping interpretation the majority accords it today.

Article 1.051(e) is clearly a mandatory statute which provides steps to ensure the effectiveness of appointed counsel, a substantive right of an indigent defendant. The majority's interpretation of Rule 52(a) undercuts the mandatory statute and abridges and modifies the substantive rights of an indigent defendant even if it can be said the rule is only procedural in nature.

The majority says that the Texas Rules of Appellate Procedure in 1986 changed "prior law." Yet in 1987, the Legislature enacted article 1.051(e). Is it not within the right of the Legislature to disapprove, modify or change the rules of appellate procedure, either directly or indirectly? Certainly it is within the legislature's authority to do so. The majority does not confront the question of what effect the 1987 enactment would have on its interpretation of Rule 52(a).

Article 1.051(e), like former article 26.-04(b) is a mandatory statute, the violation of which constitutes reversible error without the necessity of showing harm or prejudice. Not all mandatory statutes are now subject to a harmless error analysis. *Roberts v. State,* 784 S.W.2d 430, 435 (Tex.Cr. App.1990). If it can be argued in any way that Rule 81(b)(2) of the Texas Rules of Appellate Procedure has application to the instant case, I cannot conclude from this voluminous record that the error made no contribution to the conviction or punishment.

I dissent most respectfully.